UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEICO CASUALTY COMPANY,

        Plaintiff,

vs.                                                Case No. 8:05-cv-697-T-24EAJ

JOY BEAUFORD and ALICIA
EUGENIA ARCE,

        Defendants.
_____/

**O R D E R**

This cause comes before the Court for consideration of Plaintiff Geico Casualty Company's ("Geico") motion for summary judgment (Doc. No. 152). Defendant Joy Beauford ("Beauford") opposes this motion (Doc. No. 162).

**I.**    **Standard of Review**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. Id. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on

any claim. See id. When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. Id. at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Samples on behalf of Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. See Augusta Iron & Steel Works v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**II.     Background**[1]

Geico alleges the following in its complaint (Doc. No. 1): On December 29, 2001, a vehicle owned and insured by Defendant Alicia Eugenia Arce ("Arce") was involved in an automobile accident in which Beauford, Shawn Edwards, and Deborah Monteiro were injured

---

[1]The Court will not state the entire procedural and factual background of this case here. Instead, this Court incorporates by reference the background and procedural history as outlined in this Court's Order on Defendant Alicia Eugenia Arce's ("Arce") motion for relief from judgment (Doc. No. 169).

2

(Doc. No. 1, ¶5). At the time of the accident, Arce was insured by Geico. Geico alleges that Arce's policy had a $10,000.00 per person/$20,000.00 per occurrence bodily injury limit (Doc. No. 1, ¶6). With respect to losses, the policy states in relevant part:

**LOSSES WE WILL PAY FOR *YOU***

Under Section I, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *bodily injury*, sustained by a person, and
2. damage to or destruction of property,

arising out of the ownership, maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

(Doc. No. 1, ¶15 and Exhibit A thereto (Emphasis in original)).

In April 2002, Geico settled the claim of Deborah Monteiro for $9,000.00 (Doc. No. 1, ¶8). On May 9, 2002, Geico settled the claim of Shawn Edwards for $5,000.00 (Doc. No. 1, ¶9). On May 9, 2002, Geico alleges it "made the remainder policy limits available to the remaining potential claimants in an attempt to settle all claims" (Doc. No. 1, ¶10). On August 1, 2003, Beauford filed suit against Arce in state court (Doc. No. 1, ¶11).[2] On August 8, 2003, Geico made the remainder of the policy limits in the amount of $6,000.00 available to Beauford in an attempt to settle all of her claims (Doc. No. 1, ¶12). In February 2005, Beauford and Arce agreed to the entry of a judgment against Arce and a judgment in the amount of $450,000.00 was entered in favor of Beauford against Arce in the state court proceeding ("state court judgment")(Doc. No. 1,¶¶13 and 14 and Exhibit B thereto).

---

[2] In the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Civil Division (Case No. 03-7188)("state court proceeding").

On April 12, 2005, Geico filed its complaint in this Court seeking declaratory relief against Beauford and Arce (Doc. No. 1). In the complaint Geico alleges Beauford has stated an intent to make a demand against Geico to pay the state court judgment in full (Doc. No. 1, ¶17). Geico denies it has any obligation under the policy to pay the state court judgment (Doc. No. 1, ¶18). Specifically, Geico seeks a declaratory judgment that it "has no obligation to defend ARCE by virtue of exhausting its policy by payment of policy limits" and that it "has no duty to indemnify BEAUFORD for the judgment, interest, or attorney's fees." On July 11, 2005, Beauford filed her answer to the complaint and a counterclaim against Geico alleging Geico did not attempt in good faith to settle her claim arising from the accident (Doc. No. 12). Specifically, in her counterclaim Beauford alleges that as a result of Geico's failure to act in good faith, Arce suffered actual damages including, but not limited to, the amount of the state court judgment (Doc. No. 12, ¶19). Beauford further alleges she has been equitably assigned Arce's claims against Geico (Doc. No. 12, ¶20).

### III.    Motion for Summary Judgment

Geico is seeking summary judgment as a matter of law that its actions were in accordance with its duty of good faith towards its insured Arce with respect to the handling of the insurance claim asserted by Beauford. Specifically, Geico argues that under the totality of the circumstances it did not engage in bad faith in its attempt to settle Beauford's bodily injury claim since it: 1) promptly investigated all claims against Arce; 2) sought settlement of as many claims as possible within the policy limits; and 3) minimized exposure to its insured Arce. Furthermore, Geico contends that Beauford is improperly attempting to assert a conspiracy claim against Arce's attorney in the state court proceeding, Raymond Haas ("Haas"). Finally, Geico

4

argues that "any alleged negligence by Haas in his representation of Arce may not be imputed to GEICO and does not constitute a recognized cause of action under Florida law."

Beauford responds that multiple issues of material fact exist as to whether Geico fulfilled its fiduciary obligations to its insured - Arce. By way of example, Beauford argues that Geico was aware of the severity of Beauford's injuries[3] yet improperly settled the other claims against Arce on a "first come, first served" basis. Beauford contends that in its initial handling of her claim Geico communicated with the wrong counsel for Beauford (Larry Keys instead of William Merlin). Additionally, Beauford claims Geico "failed to provide any meaningful communications to Arce regarding the progress of the file and the potential excess exposure." In addressing Geico's arguments that she is impermissibly trying to assert a conspiracy claim or cause of action not recognized under Florida law, with respect to her allegations regarding the defense of the state court proceeding, Beauford contends that her theory of recovery against Geico is that Geico continued to breach its fiduciary duty to Arce not to assert a conspiracy cause of action against Geico.

An insurer, in conducting the defense of an insured, has a duty to exercise that degree of care which a person of ordinary care and prudence would exercise in the management of his own business. See Berges v. Infinity Ins. Co., 896 So. 2d 665, 668 (Fla. 2004)(citing Boston Old Colony Ins. Co. v. Gutierrez, 386 So. 2d 783 (Fla. 1980)); see also Doe v. Allstate, Ins. Co., 653 So. 2d 371, 374 (Fla. 1995). The Florida Supreme Court has summarized an insurer's common law duty of good faith as follows:

---

[3] Purportedly multiple fractures to her arms and legs, a fractured jaw and a collapsed lung (Doc. No.162, p. 1).

> This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of litigation, to warn of the possibility of excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

Gutierrez, 386 So. 2d at 785 (citations omitted). The essence of a bad faith action, whether brought by the insured or by the injured party standing in his place, is that the insurer breached its contractual duty, thereby exposing its insured to an excess judgment. See Rosen v. Florida Ins. Guar. Ass'n, 802 So. 2d 291, 294 (Fla. 2001); see also Kelly v. Williams, 411 So. 2d 902, 904 (Fla. 5th DCA 1982). "Each case is determined on its own facts and ordinarily '[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury'" Berges, 896 So. 2d at 680 (citations omitted).

In addition to these general statements of the law, there is more specific case law which provides guidance in the context of a multiple claimant situation such as in the present case. See Farinas v. Fla. Farm Bureau Gen. Ins. Co., 850 So.2d 555 (Fla. 4th DCA 2003). A carrier faced with multiple potential bodily injury claimants must: (1) fully investigate all the claims to determine how to best limit the insured's liability; (2) seek to settle as many claims as possible withing the policy limits; (3) avoid indiscriminately settling selected claims that leave the insured at risk of excess judgments that could have been minimized. See id. at 560.

Geico argues that it acted reasonably and in good faith in settling the Shawn Edwards ("Edwards") and Deborah Monteiro ("Monteiro") claims and in offering the remaining

$6,000.00 in policy limits to Beauford. Geico contends that between March 2, 2002[4] and March 19, 2002, Ramona Maldonado ("Maldonado"), the adjuster handling the Arce file, spoke with attorney Larry Keys ("Keys")[5] about Beauford's injuries, and subsequently attempted to obtain medical documentation of Beauford's injuries. Geico contends that it did not receive the requested medical documentation and in the absence of medical documentation to confirm Beauford's injuries, Maldonado "made a reasoned claims handling decision" in tendering Monteiro $9,000.00 of the $20,000.00 policy limit to settle her claim. Geico claims it was not notified that Beauford had retained new counsel, William Merlin ("Merlin"), until April 15, 2002. After learning that Beauford had new counsel, Geico claims that Maldonado made unsuccessful attempts to contact Merlin between April 15, 2002 and April 26, 2002. On April 26, 2002, after receipt of a demand letter from Edwards' attorney, Maldonado offered $5,000.00 in settlement of Edwards' claim. On April 26, 2002, Geico states that an "excess letter was issued to Arce . . . advising her of potential excess exposure, settlements made, and amounts received."

In May 2002, Geico claims it "made the remaining policy limits available to the remaining potential claimants in an attempt to settle all claims" (Doc. No. 1, ¶10 and Doc. No. 152, p. 2). Geico further alleges that over a year later, towards the end of July 2003, after her continued failed attempts to contact Beauford's attorney, Merlin, Maldonado "retained the services of a field adjuster to personally tender the remaining $6,000.00 limits" at Merlin's

---

[4] Geico contends that on March 1, 2002, the handling of the Arce file was transferred from Valerie McGhin ("McGhin") to Ramona Maldonado ("Maldonado") "due to the potentially significant nature of some of the claimants' injuries" (Doc. No. 152, p. 9).

[5] Who Geico alleges held himself out as Beauford's counsel.

office. On August 8, 2003, Geico's field adjuster went to Merlin's office and was advised that Beauford had filed suit against Arce.

In support of its summary judgment motion Geico filed what appears to be its internal records of the handling of Arce's file, or what the parties refer to as "ALOG entries" (Doc. No. 153). This forty-four page ALOG document is single spaced and contains abbreviations and truncated entries. In support of her response to Geico's motion for summary judgment, Beauford attached several exhibits (Doc. No. 162, Exh. A -K) and filed numerous deposition transcripts (Doc. No. 166)[6] which dispute some of Geico's ALOG entries. For instance, Beauford's exhibits demonstrate that Geico received a copy of a letter of representation of Beauford from Merlin on February 6, 2002 which predates the April 15, 2002 date on which Geico alleges it was advised that Beauford had new counsel (Doc. No. 162, Exhs. A and B thereto). Notwithstanding, Geico continued to attempt to communicate with Beauford's former counsel, Keys, regarding settlement after February 6, 2002 (Doc. No. 153). Furthermore, it is a question of fact whether Geico sent an excess letter to Arce on or about April 26, 2002 advising her of the status of the Monteiro, Edwards, and Beauford claims (Doc. No. 166, Maldonado Depo., pp. 59-64). However, in March 2002, Maldonado sent a excess letter to Arce explaining the severity of Beauford's injuries and that Beauford's damages could exceed the available policy limits (Doc. No. 162, Exh. C thereto). Lastly, there is a factual dispute as to whether Geico made an offer from the remaining policy limits available to Beauford in May 2002 as opposed to sometime in the summer of 2003 (Doc. No. 136, Merlin Depo., p. 23 and Doc. No. 166, Taylor Depo., pp. 7-

---

[6] Beauford also cited to state court proceeding transcripts, depositions transcripts, expert reports, and Arce's affidavit which had previously been filed in the record in this case (Doc. Nos. 65, 87, 105, 136, 138, 140, 144 - 147).

17).

These discrepancies between Geico's ALOG document and Beauford's submitted evidence raise material issues of fact for trial. At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial." House v. Bell, 126 S. Ct. 2064, 2089 (2006). Since there are issues of fact regarding Geico's handling of Beauford's claim against Arce prior to Beauford's initiating the state court proceeding, this Court will not address Beauford's allegations with respect to the defense of the state court proceeding except to note that genuine issues of material fact exist with respect to whether Geico fulfilled its fiduciary obligations to its insured, Arce, after the state court proceeding was filed by Beauford.

### **IV.   Conclusion**

After reviewing Geico's motion for summary judgment, the response, and supporting documents, the Court finds that there are genuine issues of material fact with respect to Geico's handling of Beauford's claim against its insured Arce. Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff Geico Casualty Company's motion for summary judgment (Doc. No. 152) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida this 3rd day of January, 2007.

SUSAN C. BUCKLEW
United States District Judge

Copies to:

Counsel of Record