UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GEICO CASUALTY COMPANY,

      Plaintiff,

v.                                                  Case No.  8:05-cv-697-T-24-EAJ

JOY BEAUFORD and
ALICIA EUGENIA ARCE,

      Defendant.
_____/

**O R D E R**

This cause comes before the Court on Defendants Joy Beauford and Aicia Eugenie Arce's Joint Motion for New Trial (Doc. No. 399). Plaintiff Geico Casualty Company opposes the motion (Doc. No. 405).

**I.**    **Background**

On December 29, 2001, a vehicle owned and insured by Defendant Alicia Eugenia Arce ("Arce") was involved in an accident in which Joy Beauford ("Beauford"), Shawn Edwards ("Edwards"), and Deborah Monteiro ("Monteiro") were injured (Doc. No. 1, ¶5). At the time of the accident, Arce was insured by Plaintiff Geico Casualty Company ("Geico") (Doc. No. 1, ¶6). Arce's policy had a $10,000 per person/$20,000 per occurrence bodily injury limit (Doc. No. 1, ¶6). Arce's insurance policy stated in relevant part that "[w]e will defend any suit for damages payable under the terms of this policy" (Doc. No. 1, ¶15).

In April 2002, Geico settled the claim of Monteiro for $9,000.00, and on May 9, 2002, Geico settled the claim of Edwards for $5,000.00 (Doc. No. 1, ¶¶8 and 9). Geico and Beauford were unable to settle Beauford's claim, and on August 1, 2003, Beauford filed suit against Arce

in state court (Doc. No. 1, ¶11).

In February of 2005, Beauford and Arce agreed to the entry of a judgment against Arce, and a stipulated judgment in the amount of $450,000.00 was entered in favor of Beauford and against Arce in the state court proceeding ("state court judgment") (Doc. No. 1, ¶¶13 and 14 and Exhibit B thereto).  After the stipulated consent judgment was entered against Arce, Beauford moved to reopen the state court judgment, which the state court denied without prejudice on November 17, 2005 (Doc. No. 252, ¶11).

On April 12, 2005 , Geico filed suit against Beauford and Arce (jointly "Defendants"), seeking declaratory judgment that (1) Geico had no obligation to defend Arce by virtue of exhausting its policy by payment of policy limits; and (2) that Geico had no duty to indemnify Beauford for the judgment, interest, or attorneys fees (Doc. No. 1).  Defendants filed a counterclaim against Geico, alleging that Geico acted in bad faith in failing to settle the claim of Beauford against Arce (Doc. Nos. 12 and 173).

From August 27, 2007 to September 6, 2007, this Court held a jury trial in the instant case.  The jury returned a verdict in favor of Geico, finding that Geico had not acted in bad faith in failing to settle the claim of Beauford against Arce (Doc. No. 394).  Thereafter, Defendants filed the instant motion.

**II.    Standard of Review**

Rule 59 of the Federal Rules of Civil Procedure does not enumerate all the grounds for a new trial but speaks instead in broad terms. *11 Wright & Miller, Federal Practice and Procedure §* 2805 (2d ed. 1995).  Pursuant to Rule 59(a), "[a] new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at

law in the courts of the United States . . . ."

A party may seek a new trial by arguing that "the verdict is against the weight of the evidence, that damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of the alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). "The burden of showing the existence of harmful prejudice rests on the moving party." *Richardson v. Bombardier, Inc.*, 2005 WL 3087864, at *6 (M.D. Fla. Nov. 16, 2005)(citations omitted).

### III.   Analysis

Defendants argue that a new trial is warranted because: (1) the Court failed to give a jury instruction on Geico's burden of proof concerning its affirmative defense of no reasonable opportunity to settle; (2) the Court failed to give a jury instruction stating that the focus of any bad faith lawsuit is on the conduct of the insurer, not the claimants and/or their attorneys; and (3) the Court erroneously admitted testimony that violated the attorney-client privilege. Accordingly, the Court will address each argument.

#### A.   Jury Instructions

As an initial matter, the Court notes that in its Pretrial Order (Doc. No. 282), the Court specifically instructed the parties to make every effort to agree on a set of jury instructions and to file one set of joint proposed jury instructions. Despite this instruction, each party filed their own set of jury instructions.

Defendants contend that it was error for the Court to refuse to give two of their proposed jury instructions. Defendants' proposed jury instruction number 22 stated:

> Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show not only that there was

3

>no realistic possibility of settlement within policy limits, but also that the insured was without the ability to contribute to whatever settlement figure the parties could have reached.

Defendants cite *Powell v. Prudential*, 584 So.2d 12, 14 (Fla. 3d DCA 1991) (the "*Powell* instruction") as the basis for this instruction. Defendants' proposed jury instruction number 24 stated:

>The focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured.

Defendants cite *Berges v. Infinity Insurance Company*, 896 So. 2d 665, 677 (Fla. 2004) (the "*Berges* instruction) as the basis for this instruction. Defendants contend that the *Powell* and *Berges* instructions should have been given because: (1) they were correct statements of Florida bad faith law; (2) they were not adequately covered by the jury instructions given; and (3) they dealt with legal issues so important that their omission seriously impaired Defendants' ability to present their bad faith case to the jury and otherwise mislead the jury as to the burden of proof and focus of Defendants' bad faith claims against Geico. Geico responds that it was not erroneous, and was well within this Court's discretion, to decline to give the *Powell* and *Berges* instructions. Geico argues that both instructions were abstract statements taken from case law, and that they had no direct application to the facts and evidence presented or the issues to be decided by the jury.

The Court does not disagree with Defendants that both the *Powell* and *Berges* instructions were based on Florida case law. However, the Court is not persuaded by Defendants' remaining arguments that failure to give the *Powell* and *Berges* instructions was error. The instructions that were given adequately covered the issues presented in both the *Powell* and *Burges* instructions, Defendants were not impaired in their ability to present their

4

case, and the jury was not misled by the instructions actually given.

Both parties recognize that "[a] district court has broad discretion to determine what instructions to give and in what form." *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994) (citing *United State v. Orr*, 825 F.2d 1537, 1542 (11th Cir. 1987); *United States v. Gaines*, 690 F.2d 849, 856 (11th Cir. 1982)). A new trial should be granted only if the jury instructions "did not accurately reflect the law in such a way that [the court is] left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *Phillips v. Irvin*, 2007 WL 2570756 at *9 (S.D. Ala. August 30, 2007) (quoting *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1196 (11th Cir. 2004)).

*Powell* instruction

Defendants argue that during the trial, Geico misled the jury by suggesting that it was Defendants, and not Geico, who had the burden of proving Geico's affirmative defense that Geico did not have a reasonable or realistic opportunity to settle. Defendants contend that the *Powell* instruction was necessary to correct this misleading perception and appropriately guide the jury as to which party had the burden of proof regarding Geico's affirmative defense. The Court disagrees.

The instructions given to the jury provided that any party asserting a claim or defense had the responsibility of proving every essential part of that claim or defense by a preponderance of the evidence, and the instructions also specifically defined preponderance of the evidence. Moreover, the Court gave a separate jury instruction informing the jury that "[i]f the preponderance of the evidence does not support the bad faith claim of Alicia Arce, your verdict should be for Geico Casualty Company. However, if the preponderance of the evidence does support the bad faith claim of Alicia Arce, your verdict should be for Alicia Arce." (Doc. No.

392 at 6-7.) The Court finds that the instructions given appropriately and sufficiently instructed the jury.

*Berges* instruction

Defendants make essentially the same argument for a new trial based on the allegedly erroneous exclusion of the *Berges* instruction as they did for the *Powell* instruction. To wit, that Geico improperly focused the jury's attention to the conduct of Beauford and her attorneys, in an attempt to mislead the jury by suggesting that Defendants had the burden of proving that Geico did, in fact, have a reasonable and realistic opportunity to settle. Defendants contend that the *Berges* instruction was necessary to correct this misleading perception, and appropriately direct the jury's focus on the actions of Geico. The Court disagrees.

The Court gave four separate instructions on the various obligations that an insurer owes its insured. Specifically, the jury was informed that: (1) the insurer must conduct settlement negotiations in good faith to the interests of the insured wherever those interests might be divergent from the interests of the insurance company; (2) the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured; (3) the insurer must use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business; and (4) the insurer must fully investigate all claims arising from a multiple claim accident, seek to settle as many claims as possible within the policy limit, minimize the magnitude of possible excess judgments against the insured by reasoned claim settlement, and keep the insured informed of the claim resolution process. Additionally, the jury was instructed that the issue before them was whether Geico acted in bad faith in failing to settle Beauford's claim against Arce. The Court concludes that the substance of the aforementioned instructions appropriately and sufficiently

instructed the jury that the focus of Defendants' bad faith claim was on Geico's actions.

The Court finds that the jury instructions, "considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not mislead." *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1115 (11th Cir. 2006) (quoting *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1351 (11th Cir. 2004) (quoting *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1005 (11th Cir. 1997) (citation omitted)). Accordingly, the declines to grant a new trial based on the jury instructions that were given at trial.

### B. Testimony

Defendants argue that a new trial is warranted as a result of this Court's erroneous admission of Beauford's testimony concerning attorney-client privileged information. Specifically, Defendants contend that Geico elicited testimony from Beauford regarding communication between her and Attorney Larry Keys, and also between Beauford and Attorney William Merlin, regarding Geico's settlement offer. Defendants further argue that this Court erroneously allowed Geico to publish deposition testimony of Beauford regarding this same attorney-client privileged information. Defendants assert that they were prejudiced as a result of this Court's admission of the objected-to information. Geico responds that Beauford's trial testimony did not reveal any privileged attorney-client information, and that if attorney-client communications were revealed, Beauford had waived her privilege with regard to such communication during her deposition and therefore forfeited the right to re-assert the privilege later.

The specific information to which Defendants object concerns the contents of letters that Attorney Larry Keys sent to Beauford after Beauford had terminated Mr. Keys' representation of her (the "Keys letters"). The Keys letters contained information regarding a settlement offer that

7

Geico had sent to Mr. Keys. Beauford received at least one of these letters from Mr. Keys and gave it to her then-attorney, Mr. Merlin.

In civil actions, the privilege of a witness is determined by state law. Fed. R. Evid. 501; *see Burden v. Church of Scientology*, 526 F. Supp. 44, 45 (M.D. Fla. 1981). The Court agrees that the contents of the Keys letters were covered by the attorney-client privilege. That issue was already decided by United States Magistrate Judge Elizabeth Jenkins, in an Order on Geico's motion to compel production of the Keys letters (Doc. No. 155). In her Order, Magistrate Judge Jenkins found that the Keys letters were covered by the attorney-client privilege, and denied Geico's motion to compel production of them.

The Court has considered Beauford's trial testimony and reviewed the transcripts from her deposition. During Beauford's deposition, counsel for Geico asked, "Did you receive any settlement correspondence from Geico through Mr. Keys indicating that upon proper documentation, they would offer their policy limits?" Beauford responded that she "received one letter from Mr. Keys for whatever Geico offered that they sent to him or whatever." Beauford's counsel did not object to this question nor did she instruct Beauford not to answer the question. At trial, counsel for Geico pursued a similar line of questioning, and Beauford again stated that she received a letter from Attorney Larry Keys informing her of Geico's settlement offer. At this point, Defendants objected, arguing that Beauford did not understand the line of questioning and had inadvertently disclosed attorney-client privileged information.

On redirect, Defendants confirmed that Beauford had disclosed attorney-client privileged information, and moved to strike Beauford's testimony regarding the letter. The Court denied the motion to strike, finding that Defendants had the opportunity to examine Beauford on re-direct and clarify any misunderstanding regarding a letter from Geico to Attorney Larry Keys

8

and any privileged letter from Mr. Keys to Beauford.

The line of question during both Beauford's deposition testimony and trial testimony sought only to find whether Beauford had received communication from Geico regarding a settlement. Each time Beauford volunteered the fact that she received a letter from Attorney Larry Keys stating that Geico had sent him communication concerning a possible settlement.[1] Upon consideration of all the relevant facts, the Court finds that it did not erroneously admit Beauford's testimony. Beauford volunteered the information, and Defendants could have clarified any potential juror confusion that resulted from Beauford's testimony by their examination on re-direct.

## IV.     Conclusion

The Court finds that the jury instructions, "considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not mislead." *Johnson*, 437 F.3d at 1115. Additionally, to the extent that Beauford's trial testimony revealed privileged attorney-client communications, Beauford volunteered such information, in response to questions not concerning attorney-client privileged information, during her deposition and again at trial. Furthermore, Defendants could have clarified any juror confusion regarding Beauford's testimony during their re-direct examination of Beauford. The Court finds that there was no harmful prejudice to Defendants based on either the jury instructions or Beauford's testimony.

---

[1] The Court notes that "[i]t is well understood that matters that are covered by the attorney-client privilege retain their privileged status until the protection of the privilege has been waived by the client. In most cases, a voluntary disclosure to a third party of the privileged material, being inconsistent with the confidential relationship, waives the privilege." *See* FLA. STAT. § 90.507; *Visual Scene, Inc. v. Pilkington Brothers, PLC.,* 508 So. 2d 437, 440 (3d DCA 1987) (citing *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285 (D.C. Cir. 1980)). Once communications protected by the attorney-client privilege are voluntarily disclosed, the privilege is waived and cannot be reclaimed. *Hamilton v. Hamilton Steel Corp.*, 409 So. 2d 1111, 1114 (4th DCA 1982).

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Joint Motion for New Trial (Doc. No. 399) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 30th day of June, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record